IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Sarasota Wine Market, LLC, *et al.* | ) | |
| | ) | |
| *Plaintiffs* | ) | Case no. 4:17-cv-02792-HEA |
| | ) | |
| vs | ) | |
| | ) | |
| Eric R. Greitens, *et al.* | ) | |
| | ) | |
| *Defendants* | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I. Standard of review

To survive a motion to dismiss made under Rules 12(b)(1) and (6), Fed. R. Civ. P., a complaint must state a claim that is plausible on its face, accepting all well-pleaded allegations as true. This is a lenient standard that strongly disfavors dismissal, which should not be granted unless it appears "beyond doubt" that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A complaint should not be dismissed merely because the court doubts that a plaintiff will be able to prove all its allegations, and should be granted only in an unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997). The same standard is applied to motions to dismiss based on lack of standing -- they may be granted only if it appears beyond doubt that plaintiffs will be unable to establish it. *Carlesen v. GameStop, Inc.*, 833

1

F.3d 903, 908 (8th Cir. 2016). At the pleading stage, general allegations suffice. *Weiland v. U.S. Dept. of Health & Hum. Services, E.P.A.*, 793 F.3d 949, 954 (8th Cir. 2015).

## II. The plaintiffs have standing

### A. Count I: Commerce Clause violation

The State challenges the standing of plaintiff Michael Schlueter to bring a Commerce Clause complaint, but does not question Sarasota Wine Market's standing. This concession is fatal to the State's motion to dismiss the Commerce Clause count for lack of jurisdiction, because "where one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial" to jurisdiction. *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006), *quoting Nat'l Wildlife Fed'n v. Agricultural Stabilization & Conservation Serv.*, 955 F.2d 1199, 1203 (8th Cir.1992).

The argument is without merit in any event. If a commercial transaction is disrupted by state law, both seller and buyer have been injured and have standing to bring a Commerce Clause challenge. *S. D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592 (8th Cir. 2003). Mr. Schlueter alleges that he has been unable to find wines he wants locally and has been prevented from having them shipped from out-of-state retailers because Missouri law prohibits interstate direct shipping. Compl. at ¶¶ 18-21. That meets the requirement of Fed. R. Civ. P 8(a)(2) for a short and plain statement of a claim that establishes standing -- a concrete and particularized injury that was caused by the state law being challenged. *See Jones v. Gale*, 470 F.3d at 1265. A complaint does not need to set out detailed factual allegations. *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007). The State's assertion that "Mr. Schlueter did not allege that he attempted to buy the wines from every retailer in Missouri" is irrelevant, State Mem. at 5, because the injury is not that local stores had run out of the wine, but that the law prevented him from ordering it from an out-of-state retailer.

### B. Count II: Privileges and Immunities Clause violation

The State asserts that plaintiff Heath Cordes lacks standing to bring a Privileges and Immunities Clause challenge to the law preventing him from doing business in Missouri. The State does not cast its argument in the usual terms of standing and does not contend that Cordes has failed to allege injury, causation and redressability,[1] which are the elements of standing. *Weiland v. U.S. Dept. of Health & Hum. Services, E.P.A.*, 793 F.3d at 954. Instead, the State argues that Cordes never applied for a license to sell wine in Missouri and is asserting a corporate rather than an individual right.

First, the State contends that Cordes lacks standing to challenge the rule that Missouri retail wine licenses may only be issued to residents because he never applied for one. State Mem. at 6. The State does not cite any authority for this argument, and indeed, the authority is to the contrary. Cordes alleged that he did not apply for a license because he is not a Missouri resident and state law requires residency for a wine dealer permit, so the action would have been futile. Compl. at ¶ 30. A plaintiff is not required to do a futile act as a pre-condition to bringing a

---

[1] The complaint alleges those three elements in  ¶¶ 29, 31.

lawsuit. *E.g., Constitution Party of S.D. v. Nelson*, 730 F. Supp. 2d 992, 999 (D.S.D. 2010) (nonresident may challenge residency requirement without submitting application, *citing Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1162 (8th Cir. 2008) (plaintiff has standing if further action in front of an agency would have been futile)), *vacated in part on other grounds*, 639 F.3d 417 (8th Cir. 2011).

Second, the State contends that Cordes lacks standing to bring a Privileges and Immunities Clause complaint because he owns a wine retail business. The State asserts that his claims must by definition derive solely from that business, and corporations lack standing to bring Privileges and Immunities Clause cases. This misstates the complaint. Cordes alleges in Count II that he personally wants to "practice his profession as a wine merchant in Missouri by consulting with, obtaining wines for, and delivery wines to Missouri residents, but is prevented by doing so by Missouri law." Compl. ¶ 29. This is his individual claim, not made on behalf of Sarasota Wine Market. The Wine Market's name does not even appear in any of the ten paragraphs in Count II. At this stage, all factual allegations must be accepted as true and viewed in the light most favorable to the plaintiff. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

It is beyond dispute that an individual has a right to bring a claim under the Privileges and Immunities Clause. *Minnesota v. Hoeven,* 456 F.3d 826, 834 (8th Cir. 2006). The State has cited no authority that an individual loses that right because he happens to also own a business, and the case law is to the contrary. Individual employees of a business may challenge a residency rule that prevents them from

4

earning money in another state, even when their corporate employer may not. *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865, 868 n.4 (3d Cir. 1997). Indeed, one of the plaintiffs in *McBurney v. Young*, 569 U.S. 221 (2013), the Supreme Court's most recent Privileges and Immunities case, was Roger Hurlbert, the owner of Sage Information Service, a California Corporation. Hurlbert challenged a Virginia law that denied nonresidents access to its Freedom of Information process. He had standing as an individual, even though it was his company that contracted to supply the information to clients. *McBurney v. Ciccinelli*, 616 F.3d 393, 398 (4th Cir. 2010).

Moreover, recent Supreme Court cases suggests that the old rule about corporations not being able to assert rights under the Privileges and Immunities Clause is no longer good law. The case on which the old rule was based is nearly a century old. *Hemphill v. Orloff*, 277 U.S. 537, 548-50 (1928). The Court's most recent reference to the no-corporations rule is more than thirty years old. *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 884 (1985). Since then, the Court has largely abandoned the individual-corporate distinction for constitutional purposes, explaining that extending rights to corporations protects the rights of human beings in those organizations. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2768 (2014) (freedom of religion claim may be brought by closely-held corporation). *See also Citizens United v. Fed. Election Com'n*, 588 U.S. 310, 365 (2010) (corporation may assert free speech rights).

5

## III. Count I states a valid claim under the Commerce Clause

Sarasota Wine Market is a Florida retailer who wants to ship wine to customers in Missouri. Michael Schlueter is a potential customer who wants to receive such shipments. They allege that they are unable to do so because Missouri law prohibits out-of-state retailers from shipping wine directly to consumers in the state. They also allege that retailers located in Missouri are allowed to ship wine to consumers, so the Missouri regulatory scheme discriminates against out-of-state shippers and in favor of in-state shippers. Laws that discriminate against interstate commerce are virtually *per se* invalid under the Commerce Clause, *S. D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d at 593, *citing C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 392 (1994), and are usually struck down without further inquiry. *Brown-Forman Dist. Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986). This nondiscrimination principle applies to all kinds of interstate commerce, including commerce in alcoholic beverages.

> Time and again, the Supreme Court has held that state laws --
> including liquor laws—violate the Commerce Clause if they treat
> out-of-state and in-state economic interests differently, burden the
> former, and give a competitive advantage to the latter.

*Granholm v. Heald*, 544 U.S. at 472.

The State does not dispute any of this. Nor does it claim that this case falls into the narrow exception under which discriminatory laws may be upheld if the state proves after rigorous scrutiny that it has no other means to advance its legitimate regulatory interests. *S. D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d at 593. Indeed, such an argument could not be made in a motion to dismiss, because the burden of

6

proving that no non-discriminatory alternative exists falls on the State and requires strong evidence. *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278-79 (1988).

Instead, the State makes a single narrow argument -- that this lawsuit must be dismissed because it is precluded by *Southern Wine & Spirits of Am., Inc. v. Div. of Also. & Tobacco Control*, 731 F.3d 799 (8th Cir. 2013), which affirmed a residency requirement for ownership of an in-state wholesaler. The argument is without merit, for three reasons:

First, *Southern Wine* concerned liquor wholesalers and said nothing about retailers. 731 F.3d at 807. The decision was based in large part on specific language in G*ranholm* that referred uniquely to wholesalers -- dictum that it might be constitutional to require liquor to pass through "in-state wholesalers." 731 F.3d at 810, *citing* 544 U.S. at 489.[2] No similar language exists in *Granholm* that refers to retailers or suggests retailers might be exempt from the general principle that "state regulation of alcohol is limited by the nondiscrimination principle of the Commerce Clause," 544 U.S. at 487-88, and "discrimination is neither authorized nor permitted by the Twenty-first Amendment." *Id.* at 466.

As the State points out, Missouri divides its liquor distribution system into four distinct tiers: producers, solicitors, wholesalers and retailers. State Mem. at 2. The Eighth Circuit apparently felt that these tiers were so distinct that *Granholm's* ruling against discrimination at the producer tier was not reliable precedent for

---

[2] The *Granholm* Court was summarizing the prior concurring opinion of a single Justice in a non-Commerce Clause case, *North Dakota v. U.S.*, 495 U.S. 423, 447 (1990) (Scalia, J., concurring) and did not actually endorse that view.

analyzing discrimination at the wholesaler tier. 731 F.3d at 806, 809-10. Under its own reasoning, then, the wholesaler tier is in turn so distinct from the retailer tier that *Southern Wine* is not reliable precedent for analyzing discrimination at the retailer tier. Indeed, at the retailer tier, all the cases in other circuits that have reviewed discriminatory laws have declared them unconstitutional. *Freeman v. Corrine*, 629 F.3d 146, 160-61 (3d Cir. 2010) (discriminatory restrictions on personal transportation of wine bought out of state); *Cooper v. McBeath*, 11 F.3d 547, 548 (5th Cir. 1994) (discrimination against out-of-state applicants for retail liquor licenses), *reaffirmed in Cooper v. Tex. Also. Beverage Com'n,* 820 F.3d 730, 742 (5th Cir. 2016); *Siesta Village Mkt. v. Granholm,* 596 F. Supp.2d 1035, 1038-39 (E.D. Mich. 2008) (discriminatory ban on shipping by out-of-state wine retailers); *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 259 F. Supp. 3d 785, 790 (M.D. Tenn. 2017) (discrimination against out-of-state applicants for retail liquor licenses).[3]

Second, *Southern Wine* did not involve discrimination against interstate commerce or economic protection from out-of-state competitors. It concerned a rule that the owners of a Missouri wholesale business had to be residents of the state. 731 F.3d at 803. The plaintiff was a Missouri corporation, not one located outside

---

[3] One case in another circuit upheld a law restricting interstate shipping by wine retailers that was *nondiscriminatory,* because local retailers were also not allowed to ship. *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185 (2d Cir. 2009). The court suggests in *dictum* that it did not like the result in *Granholm*, and therefore might have upheld the New York wine shipping restrictions even if they had been discriminatory. 571 F.3d at 190-91, 197-98. A second case upheld a similar nondiscriminatory law restricting shipping by out-of-state retailers, *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809 (5th Cir. 2010), but the Fifth Circuit has said since then that *Wine Country* did not change the rule that states may not discriminate in the issuance of retailer licenses. *Cooper v. Tex. Also. Beverage Com'n,* 820 F.3d at 742.

8

the state.[4] The State was not shielding its in-state businesses against competition from out-of-state wholesalers. It was regulating activity occurring wholly within the state -- ownership of a Missouri corporation. There is a substantial difference between indirect harm to interstate commerce that might be caused by regulating in-state wholesaler ownership, and direct harm to interstate commerce that is caused by a ban on shipping products to consumers from out of state, especially when those products are not otherwise available in Missouri. Compl. ¶¶ 19-20. Indeed, the Eighth Circuit inferred that it might have reached a different result if the plaintiffs had established that the wholesaler ownership rule directly discriminated against out-of-state businesses and favored local ones by "erecting barriers to competition," or "discriminating against out-of-state goods." 731 F.3d at 805-06. Even if *Southern Wine* were precedent for requiring retailers located in Missouri to be owned by Missouri residents, it says nothing about the right of retailers located outside the state to ship wine through interstate commerce.

Third, *Southern Wine* was not decided as a pure question of law under Rule 12(b)(6), and the opinion does not suggest that it could have been. The decision was based on a factual record developed at summary judgment, not on the face of the statute alone, and the facts were important to the outcome. For example, the court rejected the plaintiffs' contention that the wholesaler ownership rule was unconstitutional economic protectionism not because it was exempt from Commerce

---

[4] Southern Wine & Spirits of American, Inc., was a party, but it is a parent company that owns numerous state-licensed wholesalers and was not complaining that one of its other subsidiaries was being discriminated against. See 731 F.3d at 803.

9

Clause scrutiny as a matter of law, but because the plaintiffs failed to offer sufficient evidence to prove it. 731 F.3d at 807-09. It also rejected the plaintiffs' argument that the residency rule served no legitimate state purpose because the evidence did not support it. 731 F.3d at 811-12.

*Southern Wine* contains some sweeping *dictum* that *Granholm* should be read as narrowly as possible in this Circuit, should apply to as little of the liquor code as possible, and should be interpreted (contrary to its holding) as exempting most liquor laws from the nondiscrimination principle of the Commerce Clause. 731 F.3d at 809-10. At the same time, the panel acknowledges that resolving conflicts between the Commerce Clause and Twenty-first Amendment is generally a matter of "case-by-case balancing of interests that defies ready predictability." 731 F.3d 809. *See also Brown-Forman*, 476 U.S. at 579 (in every case, the critical consideration is the overall effect of the statute on both local and interstate activity). Although it is certainly possible that a future panel of the Eighth Circuit might extend the *Southern Wine* decision to retailers and find that discrimination in the context of direct shipping is exempt from the Commerce Clause,[5] it would have to be based on facts. At this stage, doubts about how the Eighth Circuit would ultimately decide the case do not justify dismissing it on the pleadings. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins. Co.*, 869 F.3d 381, 385 (5th Cir. 2017).

---

[5] It is also possible a new panel would not extend *Southern Wine* since it contradicts the holding in *Granholm* that state liquor laws are not protected from Commerce Clause scrutiny. 544 U.S. at 466, 472.

10

## IV. Count II states a valid claim under the Privileges and Immunities Clause

In Count II of the complaint, plaintiff Heath Cordes alleges that Missouri is denying him the opportunity to engage in his occupation as a wine merchant in the state upon the same terms as Missouri citizens. He asserts that this discrimination violates the Privileges and Immunities Clause. U.S. Const., Art IV, § 2. Whether differential treatment of out-of-state residents violates this Clause involves a two-part inquiry: (1) whether the state's law discriminates against out-of-state residents with regard to a privilege protected by the Clause, and (2) if so, whether sufficient justification exists for the discrimination. *Minnesota v. Hoeven,* 456 F.3d 826, 834 (8th Cir. 2006), citing *United Bldg. & Const. Trades Council v. City of Camden*, 465 U.S. 208, 218-19 (1984). The State argues that engaging in the retail liquor business is not a privilege protected by the Clause under the first prong, and does not address the second. State Mem. at 9-10.

The Privileges and Immunities Clause protects privileges that are fundamental to the vitality of the nation. Among them are owning property, having access to the courts, and (as relevant to this case) engaging in a trade, business or occupation. *McBurney v. Young*, 569 U.S. 221, 226-27 (2013). The courts have repeatedly held that having the opportunity to earn a livelihood is fundamental and cannot be denied to nonresidents. Jobs are vital to the national economy, whether a person is practicing law, *Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 280-81 (1985), working on the Alaska pipeline, *Hicklin v. Orbeck*, 437 U.S. 518, 524 (1978), fishing for shrimp, *Toomer v. Witsell*, 334 U.S. 385, 398-99 (1948), working construction, *United Bldg.*

11

*& Const. Trades Council v. City of Camden*, 465 U.S. 208, 210-11 (1984), or selling goods by mail-order. *Ward v. State,* 79 U.S. 418, 424-25 (1870). *See also Minnesota v. Hoeven,* 456 F.3d at 834 (fundamental privileges include the means to pursue a livelihood). The State may regulate the exercise of these privileges and may require licenses, but may not discriminate against nonresidents by denying them equal access to those licenses. *Sup. Ct. of N.H. v. Piper*, 470 U.S. at 280-81 (law license); *O'Reilly v. Bd. of App. of Montgomery Co., Md.*, 942 F.2d 281, 284-85 (4th Cir. 1991) (taxi license).

The State contends that earning a livelihood in the liquor industry is unique and not protected by the Clause because it is not one of the natural rights and privileges of citizenship, citing *Steams Serv. Co. v. Wright*, 505 S.W.2d 65, 68 (Mo. 1974). The State has confused the Privileges or Immunities Clause of the Fourteenth Amendment[6] with the Privileges and Immunities Clause in Article IV.[7] The former protects the inherent natural rights that arise from being a citizen of the Unites States; the latter concerns privileges that individual states grant to their own citizens. The State is undoubtedly correct that the interstate sale of liquor is not a natural right of federal citizenship protected by the Fourteenth Amendment, *see Glicker v. Mich. Liquor Control Com'n,* 160 F.2d 96, 98 (6th Cir. 1947), but unfortunately for the State, that is not the constitutional provision at issue. The

---

[6] "No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States."

[7] The Clause protects provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

12

complaint alleges a violation of the other Privileges and Immunities Clause, the one found in Article IV.

Even if the Twenty-first Amendment gives states greater power to restrict nonresidents' access to liquor licenses than it does for other licenses, Mr. Cordes' Privileges and Immunities claim cannot be decided on a motion to dismiss. The State still must show under the second prong that there is a substantial reason for a particular form of discrimination that is strongly related to the state's regulatory objectives. In other words, the state must prove that no reasonable less restrictive means is available that would protect its interests. This requires a factual record that has not yet been developed. *Sup. Ct. of N.H. v. Piper*, 470 U.S. at 284.

## V. Conclusion

For the foregoing reasons, the motion to dismiss the complaint should be denied.

Respectfully submitted,
Attorneys for plaintiffs*:*

*s/ James A. Tanford*
James A. Tanford (IN 15982-53)
Kristina M. Swanson (IN 34791-29)
Robert D. Epstein (IN 6726-49
*Epstein Cohen Seif &* Porter, LLP
50 S. Meridian St., Ste 505
Indianapolis IN 46204
Tel. 812-332-4966
Fax. 317-638-9891
tanford@indiana.edu

Alan S. Mandel (MO 29137)
Mandel & Mandel, LLP
1108 Olive St., 5th Floor
St. Louis MO 63101

13

877-893-1256<br>dsmm001 @aol.com

CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2018, the foregoing document was filed electronically with the Clerk of the Court and will be served on the attorney for all defendants through the Court's electronic filing system to:

    Katherine S. Walsh
    Assistant Attorney General
    P.O. Box 861
    St. Louis, MO 63188
    Katherine.Walsh@ago.mo.gov
.

     s/ James A. Tanford
    James A. Tanford
    Epstein Cohen Seif & Porter, LLC
    *Attorney for Plaintiffs*