UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARASOTA WINE MARKET, LLC ) <br> d/b/a MAGNUM WINE AND ) <br> TASTINGS, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MICHAEL L. PARSON, et al. ) <br> ) <br> Defendants. ) | CASE NO. 4:17CV2792  HEA |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. No. 37] under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiffs oppose the Motion.  The Motion has been fully briefed.  For the reasons set forth below, Defendants' Motion is GRANTED.

**Facts and Background**

Plaintiffs brought this case pursuant to 42 U.S.C. § 1983, challenging the constitutionality of Missouri's Liquor Control Law, Chapter 311 RSMo ("Liquor Control Law").

Like many states, Missouri "funnels liquor sales through a tier system, separating the distribution market into discrete levels." *Southern Wine and Spirits*

*of Am., Inc. v. Division of Alc. & Tobacco Control*, 731 F.3d 799, 802 (8th Cir. 2013). The first tier "consists of producers, such as brewers, distillers, and winemakers." *Id.* The second tier "is comprised of solicitors, who acquire alcohol from producers and sell it 'to, by or through' wholesalers." *Id*. The third tier "is made up of wholesalers, who purchase alcohol from producers and solicitors and sell it to retailers." *Id.* The fourth tier – and the tier at issue in this case – "consists of retailers, who sell alcohol to consumers." *Id.* This multi-tiered system for controlling the distribution and sale of alcohol to Missouri residents is permitted by the Twenty-First Amendment to the United States Constitution, which grants states "virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Id*. (quoting *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S.97, 110 (1980)).

Missouri implements its multi-tier system through its Liquor Control Law. The Liquor Control Law prohibits "any person, firm, partnership, or corporation" from selling alcoholic beverages in Missouri "without taking a license." §311.050 RSMo. To obtain a license, an applicant must demonstrate "good moral character" and establish that he/she is "a qualified legal voter and taxpaying citizen of the county, town, city or village" to be served. § 311.060.1 RSMo. These requirements apply to the managing officer of any corporation seeking a license. *Id*.

Defendants previously filed a Motion to Dismiss Plaintiffs' Complaint, which was granted for lack of standing under Rule 12(b)(1). Plaintiffs filed their Amended Complaint, followed by Defendants' filing of the instant Motion to Dismiss.

Plaintiffs' Amended Complaint alleges the following:[1]

Plaintiff Michael Schlueter is a Missouri resident who would purchase wine from out-of-state retailers and have it shipped to his Missouri home, if Missouri law permitted him to do so. Plaintiff Terrence French us a Missouri Resident who has been refused sales of wine by out-of-state retailers due to Missouri's Liquor Control Law that bans out-of-state sales, shipments, and delivery of wine from out-of-state sources.

Plaintiff Sarasota Wine Market, LLC d/b/a Magnum Wine and Tastings ("Magnum Wine") is a Florida Limited Liability Company that operates a retail wine store in Sarasota, Florida. Magnum Wine has received requests that it sell and ship wine to Missouri, but is unable to do so legally. It intends to sell and ship wines directly to consumers in Missouri if the laws prohibiting such sales and shipments are removed or declared unconstitutional. Plaintiff Heath Cordes is a citizen of Florida who works as a professional wine consultant, advisor, and merchant. Cordes owns and operates Magnum Wine. Plaintiffs intend to pay all

---

[1] The recitation of facts is taken from Plaintiffs' Amended Complaint and is set forth for the purposes of the pending motion to dismiss.

taxes due on interstate wine sales and shipments, and comply with all other non-discriminatory state regulations, including obtaining licenses.

Defendants Missouri Governor Michael L. Parson, Missouri Attorney General Eric Schmitt[2], and Acting Supervisor of the Missouri Department of Public Safety, Division of Alcohol & Tobacco Control Keith Hendrickson are all sued in their official capacities.

In the State of Missouri, a resident wine retailer can obtain a license from Defendants which allows it to sell, deliver, and ship by common carrier directly to Missouri consumers any wine that it has in its inventory.  A Missouri wine retailer may obtain wine for resale from distributors, auction houses and private collections. The Defendants will issue such an off-premises retail license only to wine retailers located in the State of Missouri.  Magnum Wine is not located in Missouri, is not eligible for a Missouri off-premises license, and is prohibited by law from selling, delivering or shipping wine from its inventory directly to consumers in Missouri.  No other Missouri license is available to Magnum Wine and Tastings that would allow it to sell, deliver, and ship wine from its inventory to consumers in Missouri.  It would obtain such a license if one were available.

---

[2] Effective January 3, 2019, Eric Schmitt is the Attorney General of Missouri. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Eric Schmitt is substituted for former Attorney General Joshua D. Hawley as defendant in this suit.

Plaintiff Schlueter has contacted several out-of-state retailers either on the Internet or by phone in order to buy wines he cannot find in Missouri.  These retailers include Magnum Wine, The Wine Library in New Jersey, and Federal Wine & Spirits in Boston, Massachusetts.  All of these retailers refused to sell and ship their wines to Schlueter because of Missouri law.  Some wines that Schlueter wants to buy are not available in retail stores in Missouri but are available from retail stores in other states.  Plaintiff French has also attempted to purchase wine from out-of-state wine retailers which claims he cannot obtain either in his hometown or in Missouri and has been denied these purchases.

Mangum Wine has been contacted by Schlueter who has attempted to buy wine and have it shipped to him in Missouri.  Mangum has refused to complete this order due to Missouri's ban on out-of-state retail sales, shipments, and deliveries.  Magnum Wine has lost profit of its sale of wine to Schlueter and other Missouri customers.  Magnum Wine would obtain a license to sell, ship and deliver its wine directly to consumers in the State of Missouri if one were available.

In the course of his business, Plaintiff Cordes develops personal relationships with many of his customers, makes special wine purchases for them, consults with them about wine in person, by telephone and by Internet, and sells and delivers wine to them.  Some of these customers live part of the year in Florida and part of the year in Missouri.  Cordes has received requests from his customers

to send wine to residents of Missouri as gifts but was unable to ship the specifically requested wines because the laws of Missouri prevent him from doing so.  Cordes wants to practice his profession as a wine merchant in Missouri by consulting with, obtaining wines for, and delivering wines to Missouri residents, but is prevented from doing so by Missouri law.  He has suffered economic harm as a result.  Mr. Cordes has not applied to Missouri officials for a retail license because it would be futile to do so since he is not a resident of Missouri and residency is required for a retail wine dealer permit.  If a license were available to Cordes on terms equivalent to those for Missouri citizens, he would obtain it.

Plaintiffs' Complaint alleges that the portions of Missouri's Liquor Control Law that allow in-state retailers to ship wine to Missouri consumers while prohibiting out-of-state retailers from doing the same is unconstitutional for two reasons:

First, Plaintiffs contend that the disparate treatment between in-state and out-of-state retailers violates the Commerce Clause because it discriminates against interstate commerce and protecting the economic interest of local businesses by shielding them from competition.

Second, Plaintiffs claim that the disparate treatment between residents and nonresidents violates the Privileges and Immunities Clause of Article IV of the United States Constitution because Missouri bans wine sales and deliveries by out-

of-state merchants and prohibits the issuance of licenses to nonresidents, thereby denying Cordes the privilege to engage in his occupation in the state upon the same terms as Missouri citizens.

Plaintiffs seek declaratory and injunctive relief in this matter.

Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and Rule (12)(b)(6) for failure to state a claim upon which relief may be granted.  For their 12(b)(6) motion, Defendants contend that the constitutional validity of Missouri's multi-tiered approach to regulating liquor distribution and sale has been upheld by the Eighth Circuit Court of Appeals in *Southern Wine*, 731 F.3d 799.

## Standard

"[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction." *Fabisch v. University of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Therefore, motions to dismiss for lack of standing fall under the purview of Rule 12(b)(1), which permits a party to move to dismiss a complaint for lack of subject matter jurisdiction. *Id*. "Motions to dismiss for lack of subject-matter jurisdiction can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts." *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008).  The parties do not rely on matters outside the pleadings, therefore the Court reviews Defendant's

motion as a "facial attack" on jurisdiction. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016).

Under Fed.R.Civ.P. 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must be liberally construed in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2006). Under Rule 12(b)(6), the Court must accept plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. *Phipps v. FDIC*, 417 F.3d 1006, 1010 (8th Cir. 2005). Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate. *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

**Discussion**

## A. Standing

"Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). The "irreducible constitutional minimum" of standing consists of three elements. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. The Supreme Court has explained that the injury in fact requirement means showing "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and quotation omitted).

In their Amended Complaint, Plaintiffs adequately plead standing. Schlueter and French each pled that they have tried to order wine for delivery from out-of-state retailers and been denied. They have also pled that they can only obtain their desired wines from out-of-state retailers. "[C]ognizable injury from unconstitutional discrimination against interstate commerce does not stop at members of the class against whom a State ultimately discriminates, and customers of that class may also be injured . . ." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997). As they have pled that the wines they seek are unavailable for

purchase in Missouri, the only way for Schlueter and French to engage in the interstate commerce they seek includes added costs, or imminent economic injury. Schlueter and French have standing to bring their Commerce Clause claim. Magnum Wine has alleged lost profits that resulted from their legal duty to decline orders where the buyer requested wine be shipped to Missouri residents.  Magnum Wine has standing to bring this action.   Likewise, Cordes has adequately pled that he has lost sales a result of their inability to ship wine directly to Missouri residents.  Plaintiffs' Amended Complaint establishes requisite standing to bring the instant case.

### B. Failure to State a Claim

Next, Defendants argue that Plaintiffs fail to state a claim upon which relief can be granted.  Plaintiffs defend their positions, arguing that, at the very least, the constitutionality of the Liquor Control Law as applied to out-of-state retailers cannot be decided on a Rule 12(b)(6) motion.  The Court disagrees, and finds that precedents set by the Supreme Court in *Granholm v. Heald*, 544 U.S. 460 and by the Eighth Circuit in *Southern Wine*, 731 F.3d 799 bar Plaintiffs' claims for relief.

### 1. Commerce Clause

Defendants argue that the Eighth Circuit "affirmed the validity of Missouri's multi-tier approach to regulating the distribution and sale of alcoholic beverages" in *Southern Wine,* foreclosing Plaintiff's claims.  In *Southern Wine*, an out-of-state

wholesaler claimed that Missouri's statute requiring Missouri residency for wholesaler corporations violated the commerce clause and equal protection clause.³ The issue before the Eighth Circuit, then, involved the relationship between the Commerce Clause and the Twenty-first Amendment. The Commerce Clause generally prohibits state laws that "mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Oregon Waste Systems, Inc. v. Department of Environmental Quality of Ore.*, 511 U.S. 93, 99 (1994)). The Twenty-first Amendment, however, provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited," U.S. Const. amend. XXI § 2, affording states some "prerogatives particular to the regulation of alcohol," *Southern Wine*, 731 F.3d at 804. In determining the appropriate relationship between the Twenty-first Amendment and the Commerce Clause in *Southern Wine*, the Eighth Circuit relied on the Supreme Court's decision in *Granholm v. Heald*, 544 U.S. 460.

*Granholm* addressed two state laws that essentially allowed in-state wineries to ship wine directly to in-state residents, but prohibited out-of-state wineries from

---

³ The district court also rejected the plaintiffs' arguments that the Missouri statute violated the Privileges and Immunities Clause. In doing so, the district court relied on the same legal conclusions reached in its analysis of the Commerce Clause claim. The Privileges and Immunities claim was not addressed on appeal.

doing the same. In holding that the state laws were unconstitutional, the Supreme Court emphasized that the Twenty-first Amendment does not supersede the Commerce Clause. *Id*. at 486. However, *Granholm* also upheld the constitutionality of the states' tiered liquor distribution systems under the Twenty-first Amendment. *Id*. at 488. Therefore, the Supreme Court limited the prohibition on interstate discrimination to the first tier of the liquor distribution system: producers and products. As noted by the Eighth Circuit, the second, narrower tier of wholesalers was specifically mentioned as exempt from *Granholm*'s holding:

> The three-tier system is "unquestionably legitimate," *Granholm*, 544 U.S. at 489, 125 S.Ct. 1885 (internal quotation omitted), and that system includes the "licensed in-state wholesaler." *Id*. (quoting *North Dakota*, 495 U.S. at 447, 110 S.Ct. 1986 (Scalia, J., concurring in the judgment)).

*Southern Wine*, 731 F.3d at 809.

Moreover, the Supreme Court held that "State policies are protected under the Twenty-first Amendment *when they treat liquor produced out of state the same as its domestic equivalent*." *Granholm*, 544 U.S. at 489 (emphasis added). Accordingly, *Southern Wine* mandates "state policies that define the structure of the liquor distribution system while giving equal treatment to in-state and out-of-state liquor products and producers . . . are 'protected' against constitutional challenges based on the Commerce Clause." 731 F.3d at 809.

Plaintiffs argue that *Southern Wine* is inapposite, and that dismissal on the pleadings in this case is improper because the Eighth Circuit would have to decide on the facts whether to extend its holding in *Southern Wine* to retailers. However, the Eighth Circuit expressly rejected that argument in *Southern Wine*:

> Southern Wine contends that even after *Granholm*, the constitutionality of residency requirements in the wholesale tier depends on a case-specific balancing of interests under the Commerce Clause and the Twenty-first Amendment. Insofar as *Granholm* imported a balancing approach to regulations of the three-tier system, however, it drew a bright line between the producer tier and the rest of the system. The more natural reading of *Granholm* is the Second Circuit's: "Because New York's three-tier system treats in-state and out-of-state liquor the same, and does not discriminate against out-of-state products or producers, we need not analyze the regulation further under Commerce Clause principles." *Arnold's Wines*, 571 F.3d at 191.

731 F.3d at 810.  Plaintiffs do not allege and cannot show that the challenged portions of Missouri's Liquor Control Law provide differential treatment to in-state and out-of-state products and producers.  Because Plaintiffs' claim concerns only the retailer tier of Missouri's liquor control system, it is foreclosed by the "bright line" between the producer tier and the rest of the system described in *Southern Wine*.

Plaintiffs argue that the Eighth Circuit's statement in *Southern Wine* that "[*Granholm*] drew a bright line between the producer tier and the rest of the system" is merely dictum that was unnecessary to the result in *Southern Wine* and thus should not be treated as binding authority.  This argument is not well taken.

In *Southern Wine*, the Eighth Circuit provided a wealth of reasoning that distinguishes discrimination against products and producers from discrimination in the other tiers of the liquor distribution system. *See Id*. at 809-10.

The four-tier system is a legitimate exercise of Missouri's power under the Twenty-first Amendment to "maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use," including the ability to "funnel sales through the [multi]-tier system." *Granholm*, 544 U.S. at 484.  While the state laws in *Granholm* failed to pass constitutional muster because they discriminatorily allowed only in-state producers to sidestep the tiered regulatory systems, the Missouri statutes in question require that *all* alcohol sold directly to consumers in Missouri by retailers pass through Missouri's four-tier regulatory system "funnel."  To allow out-of-state retailers to ship directly to Missouri residents would not only burden in-state retailers, who would have to operate within the four-tier system while out-of-state retailers could circumvent the Missouri regulatory system entirely, it would also violate the Twenty-first Amendment by undermining Missouri's "unquestionably legitimate" system.  *Cf. Brooks v. Vassar*, 462 F.3d 341, 352 (4th Cir. 2006) (opinion of Niemeyer, J.) ("[A]n argument that compares the status of an in-state retailer with an out-of-state retailer—or that compares the status of any other in-state entity under the three-tier system with its out-of-state counterpart—is nothing different than an argument

challenging the three-tier system itself.... [T]his argument is foreclosed by the Twenty-first Amendment and the Supreme Court's decision in Granholm[.]").

The challenged statutes do not result in discrimination between in-state and out-of-state producers or products, and they are legitimate exercises of Missouri's authority under the Twenty-first Amendment. Relying on the law of this Circuit, therefore, the Amended Complaint fails to state a Commerce Clause claim upon which relief can be granted.

### 2.  Privileges and Immunities Clause

Plaintiff Cordes is a "professional wine consultant, advisor and merchant" who resides in and is a citizen of Florida. Cordes states that because he is unable to obtain a Missouri retail wine dealer license as a non-Missouri resident, he is prevented from practicing his profession of "consulting with, obtaining wines for, and deliver[ing] wines to Missouri residents." Cordes claims that the Liquor Control Law thereby violates the United States Constitution's Article IV Privileges and Immunities Clause by "den[ying] Mr. Cordes the privilege to engage in his occupation in the state upon the same terms as Missouri citizens."

Under the Privileges and Immunities Clause, "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const., Art. IV, § 2, cl. 1. The Supreme Court has stated that:

> The object of the Privileges and Immunities Clause is to strongly constitute the citizens of the United States as one people, by placing

> the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. This does not mean, we have cautioned, that state citizenship or residency may never be used by a State to distinguish among persons.

*McBurney v. Young*, 569 U.S. 221, 226 (2013) (internal citations and quotations omitted). Whether differential treatment of out-of-state residents violates the Privileges and Immunities Clause involves a two-part inquiry: (1) whether the state's law discriminates against out-of-state residents with regard to a privilege or immunity protected by the Clause, and (2) if so, whether sufficient justification exists for the discrimination. *Minnesota ex rel. Hatch v. Hoeven*, 456 F.3d 826, 834 (8th Cir. 2006) (citing *United Bldg. & Constr. Trades Council of Camden County & Vicinity v. Mayor & Council of the City of Camden*, 465 U.S. 208, 218, 221–23 (1984)). Generally, the privilege of engaging in a trade, business or occupation is protected by the Privileges and Immunities Clause. *McBurney*, 569 U.S. at 227. However, the privilege of engaging in the occupation of selling alcohol is not protected by the Privileges and Immunities Clause, due to the Twenty-first Amendment's "broad grant of power to the states . . . to implement [multi]-tier liquor distribution systems which disparately affect non-resident wholesalers and retailers." *Southern Wine*, 2012 WL 1934408, slip op at *5 (W.D.Mo. May 29, 2012), *aff'd*, 731 F.3d 799 (8th Cir. 2013) (citing *Steamers Service Co. v. Wright*, 505 S.W.2d 65, 68 (Mo.1974) ("the liquor business does not

stand upon the same plane, in the eyes of the law, with other commercial occupations ... and is thereby separated or removed from the natural rights, privileges and immunities of the citizen.")).

Because Cordes' specific occupation is subject to limitations imposed by the Twenty-first Amendment, his right to pursue it across state lines is not protected by the Privileges and Immunities Clause. Therefore, the court does not reach the "sufficient justification" prong of the two-part inquiry. *Minnesota ex rel. Hatch*, 456 F.3d at 834. Accordingly, the Amended Complaint fails to state a Privileges and Immunities Clause claim.

## Conclusion

For the reasons stated above, Plaintiffs' Amended Complaint fails to state a claim upon which relief could be granted.

Accordingly,

**IT IS HERBY ORDERED** that the Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 37] is **GRANTED**.

A separate Order of Dismissal in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 29th[th] day of March, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE